UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID HIGGINS,

    Plaintiff,

v.                                              CASE NO.: 8:22-cv-2381

WEB DIRECT BRANDS, INC.

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DAVID HIGGINS, (hereinafter "Plaintiff" or "Mr. Higgins"), by and through the undersigned counsel, hereby files this Complaint and Demand for Jury Trial against Defendants, WEB DIRECT BRANDS, INC., (hereinafter "Web Direct"), and states the following:

## NATURE OF ACTION

1. Plaintiff brings this action against the Defendant, his former employer, for failure to pay Plaintiff's wages in violation of the Fair Labor Standards Act of 1938 and 29 U.S.C. §§201 – 219 ("FLSA").

2. Plaintiff also brings suit for retaliatory termination in violation of the FLSA, 29 USC §215(a)(3).

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, and 28 U.S.C. §1343, and 29 U.S.C. § 216(b).

1

4. The Court has personal jurisdiction over this action because Web Direct is principally located in Pasco County, Florida, and the damages at issue occurred in Pasco County, Florida.

5. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b)(2) because all events giving rise to these claims occurred within this judicial district and Defendants employed Plaintiff at a location within this judicial district.

## PARTIES

6. At all times material hereto, Plaintiff was and continues to be a resident of Pinellas County, Florida, in the Middle District of Florida.

7. At all times material hereto, Plaintiff worked in Pasco County, Florida.

8. WEB DIRECT is a For Profit Corporation organized under the laws of Florida and operates a business in Pasco County, Florida, at 13100 State Road 54 Odessa, FL 33556.

9. At all times material hereto, Plaintiff was an "employee" of the Defendants within the meaning of the FLSA.

10. At all times material hereto, Defendant was an "employer" within the meaning of the FLSA.

11. Defendant operates a business that sells or markets goods or services throughout the United States and abroad and works with employees and independent contractors throughout the United States and abroad.

## ALLEGATIONS OF FACT

12. On March 4, 2022, Web Direct hired Mr. Higgins as the Director of Marketing.

13. Mr. Higgins was a salaried employee with a contracted annual salary of $58,000 with bonuses and benefits.

14. Despite Mr. Higgins' position as a salaried employee, Web Direct regularly docked Mr. Higgins' pay if he took any routine breaks during the day. This was the company's practice for all "salaried" employees.

15. Even if Mr. Higgins missed a half day or less, WEB Direct would dock his pay as if he was an hourly employee. This policy of docking "salaried" employees for any time out of the office effectively abrogated any exemption from overtime pay that Web Direct would have gained due to the status of such employees.

16. Considering the manner in which Web Direct docked his pay, Mr. Higgins was essentially paid as an hourly employee with an hourly wage of $28.00, and was not exempt from FLSA's requirement that he be paid time and a half for all overtime.

17. In his time with Web Direct. Mr. Higgins was not paid for each hour he worked and was not paid overtime when he worked more than 40 hours in a week.

18. Per the company handbook, Mr. Higgins was to work at least forty-five hours a week. Additionally, Mr. Higgins frequently spent hours outside of the office working well over 40 hours in a week due to projects Mr. Higgins' had with employees in different time zones and foreign nations, including China.

19. To track its employees' pay, Web Direct used the program Inuit, which did not allow Mr. Higgins or other employees to access itemized paystubs that explained the reduction, despite each paycheck showing differing amounts.

20. Web Direct also failed to pay one of Mr. Higgins' direct reports for time she spent on mandatory remote meetings via video conferencing from her home. The system did not allow the employee to log in to work from her home and so she simply attended the remote meetings knowing she would not be paid for them even though she had asked to be paid to attend the meetings in the past.

21. Also, Web Direct had a policy of preventing employees from taking short breaks between 11 minutes and 20 minutes in length. If an employee was away from his or her computer for more than 11 minutes the system would log the employee out and the employee would not be allowed to log back in until a full 20 minutes had passed even the employee had returned to their desk. This policy caused Web Direct to dock the full 20 minutes from the employee's pay even if they had only taken a 11-minute break to use the restroom. This system was an ill-conceived attempt to prevent employees from taking breaks between 11 and 20 minutes in length which would have allowed the employee to not lose any pay for the break under the FLSA. Web Direct clearly did this in an effort to dock employee's pay for short breaks despite the 20-minute break rule established by Federal Courts and the Department of Labor. However, this policy clearly violated the FLSA rule against docking an employee's pay for breaks under 20 minutes.

22. On June 1, 2022, at a private marketing meeting, Mr. Higgins voiced his concerns to CEO and owner, Anthony Gaeto, about Web Direct's violations of multiple

FLSA requirements. Mr. Higgins complained about: the practice of reducing "salaried" employee's pay if they left work early for the day; 2) the failure to pay his direct report for hour long meetings she attended via video conference from her home; and 3) the policy of logging employee's out of their desk for a full 20 minutes after any break over 11 minutes in length.

23. Mr. Gaeto denied that these practices were illegal and invited Mr. Higgins to call the Department of Labor to confirm that they were permitted. Mr. Higgins then called the Department of Labor and confirmed that each of these practices violated the FLSA.

24. Days later, on June 7, 2022, Web Direct terminated Mr. Higgins in retaliation for his internal complaints about the various FLSA violations. Due to a death in the family, this was his first day back to work after the meeting on June 1, 2022.

25. Plaintiff has incurred attorney's fees and costs in bringing this lawsuit.

## COUNT I
## UNPAID OVERTIME UNDER THE FLSA

26. Mr. Higgins incorporates by reference the allegations set forth in paragraphs one (1) through twenty-five (25) above.

27. Web Direct was an employer of Mr. Higgins within the meaning of the FLSA.

28. Mr. Higgins was an employee of Web Direct within the meaning of the FLSA and, while so employed, was engaged in commerce. 29 U.S.C. § 202(a) and 29 C.F.R. § 552.99.

29. Web Direct's annual gross revenue exceeded $500,000.00 in the year preceding nonpayment.

30. Web Direct engages in international and interstate commerce as it employs various employees and independent contractors in multiple states and multiple countries.

31. Mr. Higgins was employed by Web Direct within the three-year period immediately preceding the filing of this action.

32. Web Direct agreed to pay Mr. Higgins on a biweekly basis.

33. Web Direct employed Mr. Higgins to work but failed to compensate him in accordance with the requirements provided in the FLSA.

34. Mr. Higgins was entitled to be paid at the rate of $28 per hour for all hours worked.

35. Mr. Higgins regularly worked over 45 hours a week. However, Web Direct failed to pay Mr. Higgins at a rate of one and one-half times his regular pay for all hours worked in excess of 40 hours in the workweek.

36. Web Direct knew or should have known that Mr. Higgins was entitled to receive compensation at $28 for all hours worked and time-and-a-half for all hours worked over forty hours in a week. Despite this fact, Web Direct failed and refused to pay Mr. Higgins for the hours he worked during the pay period of January 16, 2022, to January 29, 2022.

37. As a consequence of Web Direct's FLSA violation, Mr. Higgins has suffered financial loss in the form of unpaid overtime and is entitled to the additional $14 per hour

for all hours of overtime worked while he was employed by Web Direct and for which he was not paid his earned wages.

38. Web Direct's actions complained of herein were deliberate, willful, and without good faith or any legal justification within the meaning of 29 U.S.C. Section 216(b).

**WHEREFORE**, Plaintiff, Mr. Higgins, requests the following relief:

(a) That the Court find Web Direct is in violation of the FLSA;

(b) That the Court find that Web Direct's violation was willful;

(c) That the Court award Mr. Higgins compensation for the period of time referenced in this lawsuit AND liquidated damages of an equal amount of the unpaid wages, in addition to penalties and interest on said award pursuant to 29 U.S.C. § 216;

(d) That the Court award Mr. Higgins reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216; and

(e) That the Court award any other legal and equitable relief as this Court may deem appropriate.

## COUNT II
### VIOLATION OF FLSA–RETALIATION

32. Mr. Higgins incorporates by reference the allegations set forth in paragraphs one (1) through twenty-five (25) above.

33. At all times relevant, Web Direct employed Mr. Higgins within the meaning of the FLSA.

34. At all times relevant, Mr. Higgins was a salaried employee with a contracted annual salary of $58,000 with bonuses and benefits.

35. Despite Mr. Higgins' position as a salaried employee, Web Direct regularly docked Mr. Higgins' pay if he took any routine breaks during the day. This included docked pay for breaks less than one day in length or situations in which he had to leave work as little as an hour early.

36. On or about June 1, 2022, at a private marketing meeting, Mr. Higgins voiced his concerns about how Web Direct was paying him and other salaried employees to the CEO of Web Direct, Anthony Gaeto. Mr. Higgins also complained about Web Direct's practice of locking out employees from their computers for a minimum of 20 minutes anytime they were away from the computer for only 11 minutes. Mr. Higgins also complained in the meeting that one of his direct reports was not being paid for her time spent attending meetings remotely from her home.  Mr. Higgins complained to Mr. Gaeto that all of these practices were violations of the FLSA.

37. In the meeting on June 1, 2022, Mr. Gaeto denied that the practices Mr. Higgins complained of were violations of the FLSA and encouraged Mr. Gaeto to call the Department of Labor himself to check these facts.

38. On June 2, 2022, Mr. Higgins suffered a death in his family and asked of for the dates of June 2-6, 2022.

39. Upon Mr. Higgins' return to the office on June 7, 2022, Web Direct—in violation of the FLSA's prohibition against retaliation—terminated Mr. Higgins because of his complaints to Mr. Gaeto regarding Web Direct's ongoing FLSA violations.

40. Web Direct's termination of Mr. Higgins is clearly retaliation against him for objecting to and complaining to Web Direct's CEO, Anthony Gaeto, about Web Direct's violations of the FLSA.

41. Pursuant to the FLSA, 29 U.S.C. § 201 et seq. and particularly § 215(a)(3), it is unlawful for an employer to discharge an employee for protesting a violation of the law by their employers or supervisors. This includes informal complaints to management about practices which violate the FLSA.

42. Web Direct's conduct in discharging Mr. Higgins for protesting a violation of the law by Web Direct, as set forth above, violates the FLSA, 29 U.S.C. § 201 et seq. and particularly § 215(a)(3).

43. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

44. As a direct and proximate cause of Web Direct's termination of Mr. Higgin's employment, Mr. Higgins has suffered and will continue to suffer loss of income, mental anguish, emotional distress, humiliation, financial damages and loss of reputation.

45. Plaintiff has incurred attorney's fees and costs because of Web Direct's violation of the FLSA.

**WHEREFORE**, Plaintiff, Mr. Higgins, requests the following relief:

(a) Declaration that Defendant violated the FLSA;

(b) An injunction prohibiting Defendant from further violations of the FLSA;

(c) An award to Plaintiff of back pay, including interest, reflecting his lost wages and benefits, which resulted from Defendants' violations of the FLSA;

  (d)  An award of liquidated damages;

  (e)  An award of attorney's fees and costs; and

  (f)  Any other relief this Honorable Court deems appropriate.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff respectfully requests a trial by jury.

Dated this 17th day of October 2022.

            Respectfully submitted,

            */s/ Gary L. Printy, Jr., Esq*
            Gary L. Printy, Jr., Esq.
            Florida Bar No. 41956
            **PRINTY & PRINTY, P.A.**
            3411 W. Fletcher Ave., Suite A
            Tampa, Florida 33618
            Telephone (813) 434-0649
            FAX (813) 423-6543
            garyjr@printylawfirm.com
            ***Attorney for Plaintiff***